IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JULIAN ALVARADO; <br> JORGE ALVARADO; and <br> MYNOR CHOX FRANCISCO, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | No.: 3:16-cv-03030 |
| v. | ) <br> ) | Judge Crenshaw |
| BURKE SKELTON; and <br> OUTDOORS UNLIMITED, INC. | ) <br> ) <br> ) | Magistrate Judge Holmes |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR SANCTIONS

Pursuant to Fed. R. Civ. P. 11, Plaintiffs Julian Alvarado, Jorge Alvarado and Mynor Chox Francisco, by their undersigned counsel, hereby submit this Motion requesting the Court to impose sanctions against Defendants' counsel for presenting to this Court a frivolous filing, namely Defendants' Motion for Leave to Amend/Supplement Their Answer, Dkt. 29.

### RELEVANT BACKGROUND

On November 23, 2016, Plaintiffs initiated this action against Defendants to recover lost wages due and other damages resulting from Defendants' trafficking and working Plaintiffs off the clock at Defendants' landscaping company. Dkt. 1. Defendants filed their answer on December 23, 2016. Dkt. 11. The initial case management conference was held on January 23, 2017, after which the Court entered the scheduling order governing this case. Dkt. 16.

Defendants filed the instant Motion for Leave to Amend/Supplement Their Answer on April 21, 2017, Dkt. 29 (hereinafter "Motion"). The Motion seeks to add three counterclaims against Plaintiffs for breach of contract, intentional interference with business relations, and civil

1

conspiracy. In support of the Motion, Defendants filed a memorandum of support, but failed to file or serve a copy of the proposed amended Answer. As described in the memorandum, the counterclaims asserted contain nothing more than conclusory recitations of some, but not even all, required elements. None are supported by *any* facts or law, much less a reasonable inquiry, as shown below. Plaintiffs' counsel provided required notice to defense counsel that Plaintiffs would seek Rule 11 sanctions, *see* Letter from Campbell to McCarter, Apr. 25, 2017, attached hereto as Exhibit A, to which Defendants have failed to respond. Thus, sanctions under Federal Rule of Civil Procedure 11 are warranted.

## ARGUMENT

I.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 11 provides that the signing and submission of a pleading certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the claims therein are, inter alia, (1) not being asserted for an improper purpose; (2) warranted by existing law or by a non-frivolous argument for new law; and (3) supported by evidence or likely to be supported by evidence after discovery and investigation. Fed. R. Civ. P. 11(b). In other words, sanctions are appropriate when "(a) the paper is based on 'bad law;' (b) the paper is based on 'bad fact;' or (c) the paper is presented for an improper purpose such as harassment." Williams Schwarzer, *et al.*, Federal Civil Procedure Before Trial, § 17:26:1 (2000).

In considering Rule 11 sanctions, the inquiry is simply "whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir.), cert. denied, 498 U.S. 959 (1990)); s*ee also*, *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384-85 (6th Cir.

2

1997) (upholding $50,000 sanctions where party had "improper purpose" in "'stringing along' [defendant] with delaying tactics," and advanced "claims lacking legitimate evidentiary support that unnecessarily multiplied the proceedings"). This inquiry is based on the minimum due diligence standard placed on parties and their counsel under Rule 11 "to conduct a reasonable inquiry into the law and facts before" filing a motion with the court. *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 401 (6th Cir. 2009); s*ee also Blachy. v. Butcher*, 129 F. App'x 173, 180-81 (6th Cir. 2005). Defendants and their counsel have failed to meet this minimum standard.

## II.  DEFENDANTS' PROPOSED COUNTERCLAIM FOR BREACH OF CONTRACT IS FRIVOLOUS AND ASSERTED FOR AN IMPROPER PURPOSE

In their Motion, Defendants state that, "[d]ue to the breach of contract by Plaintiffs, Defendants suffered numerous damages." Dkt. 29-2 at 4. However, it is unclear from the Motion what damages Defendants suffered, how Plaintiffs breached the alleged contract, and even what contract existed between the parties. Defendants' contentions cited as the basis for this amendment are specious and warrant the Court's sanction.

Defendants' description of the facts relevant to the proposed breach of contract claim is both confusing and misleading. First, the Motion fails to identify a valid contract. Defendants make a passing reference to the "Contract/Work Order," Dkt. 29-2 at 4, but it is unclear whether Defendants are referring to the Job Order, Dkt. 1-1. The Motion focuses primarily on Plaintiffs' alleged non-compliance with "H2-B visas" and "the H2-B program." *Id*. However, neither Plaintiffs' visas nor the general H2-B visa program constitutes a *contract*, much less a contract between Plaintiffs and Defendants in this case.

Second, even if the Court could discern what contract Defendants allege Plaintiffs breached, Defendants have failed to allege any facts that would tend to show breach. Whether Plaintiffs complied with the general specifications of the H2-B visa program during or after their

3

employment with Defendants has absolutely no bearing on whether they breached a contract with Defendants. Even construing the Job Order as a contract, there is no support for the assertion that Plaintiffs breached it by quitting their jobs. *McGee v. Best*, 106 S.W.3d 48, 60 (Tenn. Ct. App. 2002) ("[I]n Tennessee, there is a presumption that an employee is an employee at will."). Plaintiff Mynor Chox *cannot* have breached the Job Order by quitting his job because, as Defendants explain in the Motion, *Defendants* fired him. Dkt. 29-2 at 4 ("After Plaintiff Mynor Chox Francisco was terminated,…."). As for the other Plaintiffs, the Motion states that "Defendants *did not allow* Plaintiffs to quit their jobs." *Id*. The additional conduct that Defendants describe in the Motion is simply not prohibited under the terms of the Job Order.[1] In other words, the Motion points to no facts or law that would support the existence of a contract or Plaintiffs' breach of it. Defendants' assertion of this counterclaim is frivolous.

Finally, Defendants have pointed to no damages they have suffered because of Plaintiffs' alleged breach. In the Motion, Defendants make conclusory reference to having fewer workers and the potential risk of Plaintiffs setting an example "lead[ing] other foreign workers who arrive on H2-B visas to consider" leaving their jobs with Defendants. Dkt. 29-2 at 4. However, the potential risk that Plaintiffs' actions will motivate other abused workers to also assert their civil rights against Defendants is not a compensable damage.

In addition to being frivolous, defense counsel has unreasonably delayed in asserting this counterclaim. Defendants offer no reason why they were not able to bring this counterclaim at the time they answered Plaintiffs' complaint, back in December 2016. At that time and at all

---

[1] As noted in Plaintiffs' Reply to Defendants' Response in Opposition to Summary Judgment, the assertion that Plaintiffs worked for other companies during their employment with Defendants is completely irrational considering Defendants' previous admissions. The evidence on the record is undisputed that Plaintiffs worked ten to thirteen hours per day, six days a week, for Defendants, had no means of transportation and relied on Defendants completely for transportation, making working additional jobs practically impossible.

4

times during this action, Defendants possessed all the information they now use to support this claim. Yet Defendants waited a full *six months* after this action was initiated to assert it. Defendants' counsel was present during the Initial Case Management Conference on January 23, 2017, when Plaintiffs' counsel stressed that their clients would be prejudiced by undue delay in this case. As part of their Motion for Partial Summary Judgment, Plaintiffs once again stressed that a quick resolution of this matter was particularly important considering their circumstances in this case. Defendants are simply wrong that Plaintiffs are not prejudiced by this delay, Dkt. 29-2 at 2, especially in light of Plaintiffs' various admonitions to the contrary.

Rule 11 sanctions are warranted where, as here, a pleading is filed for the self-evident purpose of delay. *INVST Fin. Group v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 402 (6th Cir. 1987). Direct evidence of intent to delay is not required; courts can infer the purpose of a filing from the consequences of the pleading or motion. *See Bay State Towing Co. v. Barge Am. 21*, 899 F.2d 129, 132 (1st Cir. 1990) (record supported district court's conclusion that frivolous opposition to summary judgment motion was filed for purposes of delay); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Division Sales, Inc.*, No. 91 C 2192, 1991 U.S. Dist. LEXIS 13522, at *7 (N.D. Ill. Sept. 30, 1991) (frivolous motion to disqualify opposing counsel that was brought five months after complaint was filed was for improper purpose). Defendants' improper purpose is easily inferred from Plaintiffs' stated interest in expediency and Defendants' unexplained delay seeking leave to amend. In light of that improper purpose, as well as the utterly frivolous nature of the Motion, sanctions are warranted.

### III. DEFENDANTS' PROPOSED COUNTERCLAIM FOR INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS IS FRIVOLOUS

As they did in asserting a breach of contract claim, Defendants fail to offer even conclusory statements in support of each required elements of a claim for interference with

5

business relations. Defendants' contentions cited as the basis for this amendment are specious and warrant the Court's sanction.

The first two elements of this counterclaim require identification of specific clients and proof of the defendants' intimate knowledge of the plaintiff's relationship with those clients. Dkt. 29-2 at 5 (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002)). While Defendants assert that they "have existing relationships with over one hundred and twenty (120) different clients throughout Middle Tennessee" and an "even larger" number of prospective clients, *id*., they offer absolutely no proof that Plaintiffs had any knowledge of those relationships.

As Defendants themselves concede, Dkt. 29-2 at 5, to make out a prima facie case, Defendants must show that Plaintiffs had "knowledge of that relationship and not a mere awareness of [Defendants'] business dealings with others in general." To support this element, Defendants offered a single sentence: "Plaintiffs, as employees of the Defendants, have clear and intimate knowledge with [sic] the Defendants' clientele base, and they knew their actions would cause damage to Defendants' business." *Id*. To call this statement conclusory would be an understatement. Defendants make no effort to support this conclusion with allegations of fact. In any event, finding factual support for this conclusion would be impossible, given the nature of Plaintiffs' employment with Defendants. Plaintiffs are recent arrivals to this country with severely limited English proficiency. Defendants hired them to perform manual labor, requiring little training and absolutely no education. Defendants directed every task Plaintiffs performed and decided when and where Plaintiffs worked every day. Plaintiffs performed only landscaping work for Defendants, never office or administrative work. Plaintiffs had no reason, motivation,

or opportunity to *ever* interact with Defendants' clients, much less gain a "clear and intimate knowledge" of over one hundred and twenty of them.

Further, a prima facie case of interference with business relations requires proof of the defendant's wrongful means and motive. "Under the improper means and motive [inquiry], Tennessee law requires that the predominant purpose of the defendants' conduct must be to injure the plaintiff." *Stratienko v. Chattanooga-Hamilton County Hosp. Auth.*, 435 S.W.3d 189, 201-202 (Tenn. Ct. App. 2013). The plaintiff must show that the defendant exacted that injury through "means that are illegal or independently tortious." *Id.* (citing *Trau-Med*, 71 S.W.3d at 701). In this case, after reading Defendants' argument regarding the proposed intentional interference with business relations claim, Dkt. 29-2, at 4-5, it is unclear what improper means Defendants allege, or even what Defendants allege Plaintiffs did to interfere with Defendants' business. Defendants' Motion does not mention any overt act of interference by Plaintiffs. Instead, Defendants make only a passing reference to "releasing evidence and publishing new stories about this case." Dkt. 29-2, at 5. Defendants do not specify what evidence Plaintiffs allegedly released or what news stories they allegedly published.[2] In any event, there is nothing "illegal or independently tortious" about speaking publicly about abusive working conditions. Further, Defendants fail to allege any facts that Plaintiffs' "predominant purpose" in acting was to harm Defendants. The Motion is frivolous and warrants sanctions against defense counsel for raising frivolous claims before the Court.

---

[2] Plaintiff Mynor Chox Francisco was interviewed by a reporter with the Tennessean in connection with that reporter's investigative series on worker abuses in the Nashville area. Portions of that interview appeared in an article in the Tennessean on April 14, 2017. That is the only "news article" concerning this case of which Plaintiffs are aware.

## IV. DEFENDANTS' PROPOSED COUNTERCLAIM FOR CIVIL CONSPIRACY IS FRIVOLOUS

Defendants boldly assert that "Plaintiffs in this case acted with a common design to interfere with the contracts and business relationships the Defendants have with their current and prospective clients." Dkt. 29-2 at 6. However, Defendants offer absolutely no evidence of this conspiracy beyond this single, conclusory allegation. In fact, a reasonable inquiry would show that civil conspiracy claims are held to a heightened pleading standard. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Yet, Defendants' Motion does not even meet the more lenient Rule 8 pleading standard. In their Motion, Defendants fail to even attempt to explain how Plaintiffs acted with an unlawful purpose or by unlawful means, who the participants in this conspiracy are, what the underlying tort in the conspiracy is, how Plaintiffs each intended to harm Defendants and also had knowledge of the others' intent to harm Defendants, or what damages Defendants have suffered. *See Haynes v. Bass*, 2016 Tenn. App. LEXIS 404, *21-22 (Tenn. Ct. App. June 9, 2016). In other words, the Motion points to no facts or law that would support the proposed claim. The Motion is frivolous and warrants sanctions.

## CONCLUSION

Defendants' last minute Motion is not well made, but is instead an act of retaliation against Plaintiffs for exercising their civil rights in a public forum. The Motion is not based on allegations of fact, but instead rests on conclusory allegations and disregards well settled and easily discoverable legal precedents. It has not only caused Plaintiffs to incur substantial unnecessary legal expenses, but has wasted the Court's time and resources as well. Therefore, the Court should enter "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Plaintiffs should be granted an award of attorneys' fees and costs against counsel for

responding to Defendants' Motion in the amount of $9,200.  *See* Declaration of Karla Campbell, filed contemporaneously; *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1231 (6th Cir. 1989) ("In most cases, including the present one, a 'lodestar' calculation of attorney's fees and actual charges for related expenses will provide a sufficient deterrent.").

Dated: May 23, 2017                                Respectfully submitted,

*/s/ Karla M. Campbell*
Karla M. Campbell (BPR# 27132)
Callie Jennings (BPR# 35198)
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN  37203
Tel.: (615) 254-8801
Email: calliej@bsjfirm.com
          karlac@bsjfirm.com

*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I certify that on May 23, 2017, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF and served via the Court's Electronic Filing System to:

Bert W. McCarter
101 North Maple Street
Murfreesboro, TN 37130
Tel.: (615) 893-9255
Fax: (615) 893-9258
Email: bertmccarter@mcelaw.com

Attorney for Defendants, Outdoors Unlimited, Inc. and Burke Skelton.

*/s/ Karla M. Campbell*
Karla M. Campbell