IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JULIAN ALVARADO, JORGE ALVARADO and MYNOR CHOX FRANCISCO | )<br>)<br>) |
| v. | ) No. 3:16-3030 |
| | ) |
| BURKE SKELTON and OUTDOORS UNLIMITED, INC. | )<br>) |

## **MEMORANDUM OPINION**

Currently pending is Plaintiffs' motion for partial summary judgement on liability, which alleges that Plaintiffs are entitled to judgment of liability as a matter of law with respect to Count I of the complaint, involving violation of the Fair Labor Standards Act ("FLSA"), and Count VI,[1] involving common law breach of contract. *See* Docket Entry ("DE") 20. Defendants have filed a response to this motion (DE 28), to which Plaintiffs have filed a subsequent reply. DE 30. This matter is before the undersigned for all further proceedings pursuant to the consent of the parties (DE 14) and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (DE 15).

For the reasons that follow, Plaintiffs' motion (DE 20) is **GRANTED IN PART** as to liability for the FLSA claims for unpaid overtime and the breach of contract claims for unpaid overtime, and **DENIED IN PART** as to any other breach of contract claims, including without limitation, for failure to provide adequate housing.

---

[1] Curiously, Count VI of the complaint follows Count III. *See* DE 1 at 9-10. The Court speculates that Plaintiffs made a simple typographical error by labeling their fourth count as "Count VI" instead of "Count IV." Regardless, for purposes of consistency, the Court will refer to this count as Count VI in accordance with Plaintiffs' labeling.

## I. FACTS[2]

Defendant Burke Skelton is the owner of Outdoors Unlimited, Inc. (collectively referred to as "Defendants"), a business with a principal office in Murfreesboro, Rutherford County, Tennessee. Plaintiffs are citizens of Guatemala who traveled to the United States in May of 2016 to work for Defendants pursuant to the H-2B visa program. In accordance with the terms of the "Job Order" provided by Defendants, which the parties agree governed the terms of employment, Plaintiffs would work Monday through Friday from 8:00 a.m. until 5:00 p.m. and were to be paid $12.02 per hour and $18.03 per hour of overtime work. Plaintiffs resided in two trailers located in a remote area approximately 15 minutes from Defendants' place of business, one of which was owned by Defendants.[3] The Job Order provided that transportation for Plaintiffs, who were without licenses or vehicle, would be "provided to and from area jobsites from a central Rutherford County area pick up location." DE 1-1 at 2.

The parties dispute the method by which the amount of time that Plaintiffs spent working was calculated. Plaintiffs claim that Defendants maintained a "punch clock" machine that was used to stamp timecards to keep track of Plaintiffs' time, that Defendants would stamp Plaintiffs' timecards at the principal place of business before Plaintiffs boarded employer-owned trucks that transported them to the designated job site, and would "punch out" the card after Plaintiffs were brought back to the principal place of business. Defendants claim that although the "punch

---

[2] Unless otherwise noted, the factual background is derived from the parties' respective responses to each other's statements of undisputed material facts. *See* DE 28-2, 30-1.

[3] Plaintiffs allege that Defendants initially provided just one trailer, but provided another trailer approximately one month later. DE 1 at 3. Defendants claim ownership of only one of the trailers. DE 28-2 at 4. Because, as stated below, the Court declines to grant summary judgment as to the housing contract claims, this disputed fact is immaterial to the issues upon which the Court grants summary judgment.

clock" system was briefly utilized, they ultimately relied on the reports of the crew leaders regarding the amount of time that each employee worked.

Plaintiffs allege that Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.*, by failing to compensate Plaintiffs for all hours worked, including overtime work. Plaintiffs claim that they "regularly" worked between 60 and 70 hours per week, which included work on Saturdays, but that Defendants normally compensated them for just 30 to 50 hours of work per week. Defendants deny this claim and respond that Plaintiffs were properly compensated for all time worked, which normally fell between 40 and 55 hours of work per week, including work performed on Saturdays. This discrepancy in time is partially based on Defendants' contention that the additional hours claimed by Plaintiffs erroneously include commute times to and from work, as well as time Plaintiffs spent waiting for other crews to finish work before all employees were transported from a jobsite back to Defendants' place of business. Defendants note that Plaintiffs regularly traveled between one and two hours to a job site, but argue that travel time should not be included in the calculation of the amount of time worked by Plaintiffs.

Plaintiffs also allege that Defendants were contractually obligated to provide suitable housing for Plaintiffs. According to Plaintiffs, the trailers in which they were placed by Defendants were not properly equipped with heat or air-conditioning and were otherwise unsuitable for the number of employees living there. Defendants dispute that they were required to provide housing to Plaintiffs, that any housing provided was as a courtesy to Plaintiffs and other workers, of which they availed themselves voluntarily, and that the housing provided was adequate.

## II. ANALYSIS

### A. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant a motion for summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to overcome a motion for summary judgment, the non-movant party, Defendants in this case, must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). In evaluating the evidence of record, the court must draw all inferences in the light most favorable to the non-moving party. *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

At this stage of litigation, it is not the court's role to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id*. (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

**B. Analysis**

Plaintiffs claim that they are entitled to partial summary judgment based on Defendants' admissions, through their answer to the complaint and various discovery responses, that there are no disputes of material fact as to Defendants' liability for FLSA violations and breach of contract. DE 21 at 3. Plaintiffs correctly note that in an action to recover unpaid overtime compensation under the FLSA, they must prove the following by a preponderance of the evidence: (1) that an employer-employee relationship existed; (2) that the activities at issue were within the coverage of the FLSA; and (3) that the employer defendant failed to pay overtime wages as required by law. *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 806 (N.D. Ohio 1996) (citing 29 U.S.C. § 201 *et seq*.). The parties agree that in order to establish liability in a breach of contract claim, Plaintiffs must demonstrate: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assoc's. Ltd. Partnership, LPIMC, Inc.,* 79 F.3d 496, 514 (6th Cir. 1996)).

**1. Overtime Pay Claims**

Plaintiffs assert that Defendants have conceded satisfaction of the first two elements for the FLSA claim and argue that "indisputable evidence of liability in the form of payroll records and a time card" shows that Plaintiffs have satisfied the third element. DE 21 at 4. Defendants, however, dispute that they have failed to pay overtime wages and argue that while Plaintiffs' workdays sometimes lasted between 10 and 13 hours, which is longer than nine hours of daily

5

work purported in the contract,[4] portions of that time did not constitute "work" covered under the FLSA. DE 28-1 at 4.

Although both parties spend substantial briefing addressing other matters, the critical issue for purposes of the pending motion for partial summary judgment is a relatively simple one about the compensability of travel time.[5] According to Plaintiffs, each workday consisted of one of Defendants' employees picking Plaintiffs up from their trailer and driving them for approximately 10 to 15 minutes to a facility owned by Defendants, at which point Plaintiffs joined other workers, retrieved the necessary landscaping tools for the workday, and were then transported to a jobsite. DE 30 at 3. For purposes of the pending motion, Plaintiffs concede that the ride from their trailer to the facility owned by Defendants where tools are stored is not compensable time, but argue that they are owed overtime for the time during which Plaintiffs were transported to the jobsite from that facility. *Id*. at 3-4. Defendants dispute that such transportation represented compensable time and note that while they provided such transportation for Plaintiffs, they were under no obligation to do so. *Id*.

---

[4] Specifically, the contract offers "$12.02/hr $18.03 [overtime] 8am-5pm." DE 1-1 at 2.

[5] Although not initially argued directly by Plaintiffs, the issue of compensability of travel time was raised by Defendants in their response to Plaintiffs' partial summary judgment motion. *See* DE 28 at 2 and 4; DE 28-2 at 5-7 (Defendants' response to Plaintiffs' statement of undisputed facts at ¶¶ 16, 19, 20) and 7 (Defendants' statement of undisputed facts at ¶¶ 3 and 4). Plaintiffs in their reply filings then addressed the travel time, and, in particular, the stops at the tool storage building at the beginning and end of the day, as part of the extended workday for which they seek overtime pay. *See* DE 30 at 2-4; DE 30-1 at 2-3, ¶¶ 3-4; DE 31; and, DE 32. Defendants raised the issue of travel time in their response, and had ample opportunity to either request leave to file a surreply or move to strike the declarations submitted by Plaintiffs in reply, neither of which Defendants did. *See Matthews v Wells Fargo Bank*, 536 F. App'x 577, 579-80 (6th Cir. 2013).

Under 29 U.S.C. § 254, known as the "Portal-to-Portal Act," an employer is not required to pay employees for the following activities:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). Therefore, because employees are entitled to compensation only for travel time that represents a "principal activity" of the employee, the issue here is whether the travel from the Defendant-owned building to the jobsite each day represents a compensable principal activity or a preliminary/postliminary activity.[6]

At least two other circuits have held that time spent traveling on an employer-owned vehicle to a jobsite is generally not compensable. *See Bonilla v. Baker Concrete Constr. Inc.,* 487 F.3d 1340, 1343 (11th Cir. 2007) (holding that employees' travel time on employer-provided buses to jobsites was not compensable under the FLSA); *Vega v. Gasper,* 36 F.3d 417, 424-25 (5th Cir. 1994) (holding that daily four-hour travel on buses provided by an employer was not compensable under the FLSA). However, the Fifth Circuit's reasoning in *Vega* was based in part on the fact that the employees did not, before or while riding the buses, "load tools or engage in activities that prepared them or their equipment for [their work of] picking chili peppers." *Id.* at

---

[6] Of note, examples of activities that "would normally be considered 'preliminary' or 'postliminary' activities" include "riding on buses between a town and an outlying mine or factory where the employee is employed" and "riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted." 29 C.F.R. § 790.7(f).

425. In contrast, the Fifth Circuit noted that, "[w]here an employee is required to report at a meeting place to receive instructions or to perform other work there, *or to pick up and to carry tools*, the travel from the designated place to the workplace is part of the day's work, and must be counted ...." *Id*. (quoting 29 C.F.R. § 785.38) (emphasis added).

Under the plain meaning of section 254(a) of the Portal-to-Portal Act, this case depends on whether Plaintiffs are engaging in any work-related activity before arriving at their job sites. If Plaintiffs were merely traveling to their "actual place of performance of the principal activit[ies]" before beginning any work activity, then section 254(a)(1) exempts such travel from compensation under the FLSA. But, if Plaintiffs, by retrieving their work tools, are engaging in work-related activity that is "integral and indispensable" to their work, then any travel afterwards is compensable. *IBP, Inc. v. Alvarez,* 546 U.S. 21, 37, 126 S. Ct. 514, 525, 163 L. Ed. 2d 288 (2005) ("[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under [29 U.S.C. § 254(a)] of the Portal-to-Portal Act. Moreover, during a continuous workday, any [travel] time that occurs after the beginning of the employee's first principal activity is excluded from the scope of the provision, and as a result is covered by the FLSA.").

Although Defendants provide very little explanation regarding what Plaintiffs actually did after being picked up from their trailers, Defendants state as an undisputed fact that Plaintiffs "met *at the business location each morning and travelled to other locations* for work hours ...." DE 28-2 at 7, ¶ 3 (emphasis added). In response, Plaintiffs maintain that they "travelled to the tool storage location every morning *to retrieve and load the tools required that day*." DE 30-1 at

8

2-3, ¶ 3 (emphasis added).[7] Additionally, Plaintiffs rely on the declarations of Mynor Chox Francisco and Julian Alvarado (two of the named plaintiffs), which state that, before being transported to a job site, they were driven from their trailer to a tool storage site where Defendants kept their landscaping tools so that Plaintiffs could "gather[] the required tools for that day and load[] them in the vehicle," and that they were taken back to the tool storage site at the end of the workday "to drop off the tools." DE 31 at 1-2; DE 32 at 1-2. Defendants did not respond to these contentions.[8]

Based on these facts, the Court finds that Defendants have failed to provide sufficient evidence to demonstrate that there is a genuine issue of fact with respect to Plaintiffs' FLSA unpaid overtime claims. Defendants do not dispute that Plaintiffs have satisfied the first two prongs of the test for determining whether an FLSA violation has occurred, and instead focus solely on the third prong by claiming that Plaintiffs have incorrectly included non-compensable travel time in their calculation of unpaid overtime wages. DE 28-1 at 4-5. Plaintiffs agree with Defendants' statement that Plaintiffs met at the same location every morning, which Plaintiffs identify (without dispute) as the tool storage facility. Plaintiffs describe the purpose of this daily

---

[7] The "tool storage location" appears to be the same facility that Defendants refer to as "the business location" or "the workplace." For example, in the parties' various discussions of the use of a punch clock, there does not appear to be any dispute that the punch clock was located at Defendants' principle location, from which Plaintiffs were transported to job sites. *See* 28-1 at 2 ("Plaintiffs typically left their residence and/or the principal office of Outdoors Unlimited, Inc. early in the morning and travelled to the day's job site."); DE 28-2 at 7, ¶ 3 (Defendants' stated undisputed fact that "Plaintiffs met at the business location each morning and travelled to other locations for work hours"); and, DE 28-3 at 4, ¶ 23 (referring to Plaintiffs being picked up at principal business location) and ¶ 25 (stating the punch clock remained "in the workplace").

[8] As noted, if Defendants dispute these contentions, they had plenty of opportunity to take appropriate action.

meeting, again without dispute, as gathering and loading *the required tools for the day*, which were then returned to the same location at the end of the workday. DE 30-1 at 2-3, ¶ 3; DEs 31 and 32.[9]

The uncontroverted evidence is that the tools loaded and unloaded daily were those required for the day's job, in other words, in preparation for Plaintiffs' landscaping work. In the absence of any evidence to the contrary, this constitutes a principal activity of the workday. *See Cantu v. Milberger Landscaping, Inc.*, 12 F. Supp. 3d 918, 922-23 (W.D. Tex. 2014) (holding that compensable time under the FLSA included work "of the nature of loading and unloading" equipment that was performed at employer's place of business); *Garcia v. Champion Glass, LLC*, Civ. No. SA-12-CA-0703-FB, 2014 WL 12537863, at *4 (W.D. Tex. Oct. 23, 2014) (Plaintiffs' evidence that they loaded and unloaded tools and equipment at Defendant's place of business prior to and after their regular work hours was sufficient evidence of principal activities to overcome motion for summary judgment); *Dole v. Enduro Plumbing, Inc.*, No. 88-7041-RMT (KX), 1990 WL 252270, at *5 (C.D. Cal. Oct. 16, 1990) ("The performance of other work at [] a designated meeting place (*even merely picking up needed tools or materials*), as in this case, similarly triggers at the designated meeting place the start of the employee's workday, with the same effect on the subsequent travel.") (emphasis added).

Additionally, the contract between the parties lists "loading and unloading materials" as part of the job description. DE 1-1 at 2. This is significant because that job description supports that picking up and carrying tools was an integral and indispensable part of Plaintiffs' job, as

---

[9] Despite the arguments made by both Plaintiffs and Defendants, the form of transportation by which Plaintiffs traveled to the morning meeting place is not material to the outcome. The operative evidence is that Plaintiffs met daily at the same facility to gather and load (and later unload and store) the tools needed for that day's job.

contemplated by 29 C.F.R. § 785.38 (indicating that if an employee is required to "pick up and [] carry tools" from a designated place before traveling from that designated place to a jobsite that is "part of the day's work," such time gathering tools "must be counted as hours worked regardless of contract, custom, or practice").

Defendants make no attempt to refute Plaintiffs' assertions that gathering and loading equipment to be used at the various jobsites was a necessary and principal part of their workday. Rather, Defendants simply argue that such time was not compensable. That, however, is a legal dispute and not a dispute as to any facts regarding Plaintiffs' duties as employees. This matter is thus ripe for a summary judgment determination as to liability.

The evidence offered by Plaintiffs satisfies the only issue in dispute, namely the third prong to establish liability for unpaid overtime compensation under the FLSA, and sufficiently demonstrates that Defendants failed to pay overtime wages in violation of the FLSA for the time after Plaintiffs' arrival at the tool storage facility at the beginning of the workday and until Plaintiffs left the tool storage site at the end of the workday. Plaintiffs' motion for partial summary judgment with respect to Defendant's liability for unpaid overtime under the FLSA will therefore be granted.[10]

The Court similarly finds that there is no genuine issue of material fact as to Plaintiffs' breach of contract claim. Defendants have admitted that the Job Order represented an

---

[10] In light of this finding of an FLSA violation, the Court need not address Defendants' additional argument that Plaintiffs have improperly calculated the amount of compensable time worked by Plaintiffs based on time spent at the jobsites waiting on other crews to finish their work prior to returning to Defendants' place of business. DE 28-1 at 4. That argument does not appear to be a basis upon which Plaintiffs assert unpaid overtime, and, in any event, was not sufficiently addressed by either party for purposes of the pending motion for partial summary judgment.

enforceable contract (DE 28-1 at 5), one which included an offer of $18.03 for each hour of overtime work. DE 1-1 at 2. The Court's conclusion that Defendants failed to compensate Plaintiffs for overtime work of loading and unloading at the Defendant's place of business encompasses "loading and unloading materials" as identified in the contract. This sufficiently demonstrates breach of contract and damages of unpaid wages caused by said breach, thus satisfying the latter two elements necessary for Plaintiffs' breach of contract claims for unpaid overtime work. *See ARC LifeMed, supra.*[11]

### 2. Housing Claims

The parties' respective briefs also extensively discuss Defendants' alleged failure to provide adequate housing for Plaintiffs. To the extent that Plaintiffs claim this as an additional, actionable breach of contract for which damages are recoverable, there are multiple genuine disputes about material facts. Defendants dispute that the Job Order creates a contractual obligation to provide housing and contend instead that the housing was voluntarily offered and accepted. *See* DE 28-2 (Defendants' Response to Plaintiffs' Statement of Undisputed Facts) at ¶¶ 11, 14, and 15; DE 28-3 (Affidavit of Burke Skelton) at ¶¶ 11, 14, and 17. Defendants also dispute the condition of the housing provided and maintain that the housing was suitable. *See* DE 28-2 at ¶¶ 12, 13, and 15; DE 28-3 at ¶¶ 12, 13, and 14. Based on this information, questions of fact remain.

---

[11] The parties also spend a substantial part of the respective briefs discussing Defendants' timekeeping methods and procedures. The accuracy of Defendants' timekeeping may be material to calculation of damages, which is an issue for trial. Defendants' timekeeping methods are not, however, material to the issue of compensability of Plaintiffs' travel time.

## III. CONCLUSION

For the above stated reasons, Plaintiff's motion for partial summary judgment with respect to Counts I and VI of the complaint (DE 20) is GRANTED in part as to liability for the FLSA claims for unpaid overtime and the breach of contract claims for unpaid overtime, and DENIED in part as to any other breach of contract claims, including without limitation, failure to provide adequate housing. All other claims, including without limitation, Plaintiffs' claims under 29 U.S.C. § 215(a) in Count I of the Complaint, Plaintiffs' claims in Count II, Plaintiffs' claims in Count III, and any other breach of contract claims in Count VI remain for disposition, along with determination of damages.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge